EPSTEIN DRANGEL LLP
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: (212) 292-5390

VERSO LAW GROUP LLP
Gregory S. Gilchrist (State Bar No. 11536) (*pro hac admission pending*)
Ryan Bricker (State Bar No. 269100) (*pro hac admission pending*)
Sophy Tabandeh (State Bar No. 287583) (*pro hac admission pending*)
Paymaneh Parhami (State Bar No. 335604)  (*pro hac admission pending*)
209 Kearny Street, Third Floor
San Francisco, California 94108
Telephone: (415) 534-0495
Email: ryan.bricker@versolaw.com

*Attorneys for Plaintiff*
*TTFM Labs, Inc.*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TTFM LABS, INC.,<br><br>*Plaintiff*<br><br>v.<br><br>TESTCODE, INC. and WILLIAM CHASEN,<br><br>*Defendants* | **CIVIL ACTION NO.**<br><br><br>**COMPLAINT**<br><br>**Jury Trial Requested** |

# GLOSSARY

| Term | Definition |
|------|------------|
| **Plaintiff or Turntable** | TTFM Labs, Inc. |
| **Defendants** | Testcode, Inc. and William Chasen |
| **Complaint** | Plaintiff's instant Complaint |
| **TURNTABLE Goods** | Plaintiff's good offered under its TURNTABLE Mark including software used in connection with the TURNTABLE Services |
| **TURNTABLE Application** | U.S. Trademark Application Serial No.: 98/033,551 for "TURNTABLE" for services in Classes 9, 38, 41, 42 and 45 filed on June 8, 2023 with a date of first use of September 2020. |
| **TURNTABLE Mark(s)** | The mark covered by the TURNTABLE Application. |
| **TURNTABLE Services** | Plaintiff's services offered under its TURNTABLE Marks, including, but not limited to, its music sharing and social networking services. |
| **Plaintiff's Websites** | Plaintiff's fully interactive websites located at www.tt.fm and www.turntablelive.com |
| **Infringing Application** | U.S. Trademark Application Serial No.: 90/519,658 for "TURNTABLE" for "Online social networking services in the field of music" in Class 45 filed on February 9, 2021 and expressly abandoned after an inter partes decision by the Trademark Trial and Appeal Board on August 30, 2023. |
| **Infringing Domain Names** | turntable.fm, turntable.com |
| **Infringing Social Media Accounts Handles** | @turntablefm |
| **Defendants' Website(s)** | Any and all fully interactive websites held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, that use the TURNTABLE Mark, that they operate to communicate with consumers regarding their Infringing Products and/or Infringing Services, including, without limitation, the website located at www.deepcut.com and Defendants' websites located at the Infringing Domain Name |
| **Defendants' Services** | Music-focused social networking services that directly compete with Plaintiff's TURNTABLE Services under the mark, Deepcut. |

Plaintiff, a corporation organized and existing under the laws of the State of Delaware, by and through its undersigned counsel, alleges as follows:[1]

## NATURE OF THE ACTION

1.       This action involves claims for infringement of Plaintiff's unregistered trademarks and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. § 1125(a)); cybersquatting in violation of the Anticybersquatting Consumer Protection Act (15 U.S.C. §1125(d)) and related state and/or common law claims (the "Action"), arising from Defendants' willful infringement of the TURNTABLE Mark, including, without limitation, through Defendants' use of Plaintiff's TURNTABLE Mark in domain names and social media accounts to divert traffic to Defendants' music-focused social networking service, Deepcut, and Defendants' prominent use of Plaintiff's TURNTABLE Mark on Defendants' Websites, and/or in connection with Defendants' Services, and/or in connection with their advertisement, marketing, promotion, offering for sale and/or sale of Defendants' Services.

## JURISDICTION AND VENUE

2.       This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to: 28 U.S.C. §§ 1331 and 1338(a), 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 28 U.S.C. § 1338(b) as an action arising out of claims for unfair competition, and 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or

---

[1] Where a defined term is referenced, but not defined herein, it should be understood as it is defined in the Glossary.

controversy.

3.        Personal jurisdiction exists over Defendants in New York pursuant to N.Y. C.P.L.R. § 302(a)(1) and/or N.Y. C.P.L.R. § 302(a)(3), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York and in this judicial district, and/or derives substantial revenue from business transactions in New York and in this judicial district, and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' infringing actions caused injury to Turntable in New York and in this judicial district such that the Defendants should reasonably expect such actions to have consequences in New York and in this judicial district.

4.        Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants reside in this judicial district, Defendants conduct business in this judicial district and/or a substantial part of the events or omissions giving rise to the asserted counts occurred in this judicial district, and harm to Plaintiff has occurred in this district. Alternatively, as noted *supra*, this Court has personal jurisdiction over Defendants.

## THE PARTIES

5.        Plaintiff is a Delaware corporation, with a principal place of business at: 1111 Brickell Ave., Floor 10. Miami, FL 33131.

6.        Upon information and belief, Defendant Testcode, Inc. ("Testcode") is a Delaware corporation with its principal place of business at 263 S 4th Street, Unit #454, Brooklyn, New York 11211.

7.        Upon information and belief, Defendant William Chasen (hereinafter, "Chasen") is an individual domiciled in New York who formed Testcode on or around March 22, 2021.

8.      Upon information and belief, Defendants are related and/or affiliated individuals or companies that have collectively engaged in the illegal conduct alleged herein, and have enriched themselves, while Plaintiff has suffered enormous financial injury.

## GENERAL ALLEGATIONS
### Plaintiff and Its Well-Known Social Music Service

9.      Founded in or around September 22, 2020, Plaintiff Turntable is a social music service and virtual music venue dedicated to providing opportunities for DJs and artists, and a unique and engaging listening experience for music fans.

10.      Turntable provides its services and engages with consumers through its domain names and social media accounts, including Plaintiff's Websites, and its @turntablettlive Instagram and X profiles.

11.      Since its launch in September 2020, Turntable has extensively promoted, offered, and distributed its TURNTABLE Goods and TURNTABLE Services in interstate commerce under the its distinctive TURNTABLE Mark, which is arbitrary with respect to such TURNTABLE Goods and TURNTABLE Services, or at minimum suggestive of such TURNTABLE Goods and TURNTABLE Services.

12.      Turntable advertises and sells its TURNTABLE Goods and TURNTABLE Services throughout the United States and the world.

13.      Turntable has invested considerable resources, time, and money in marketing its TURNTABLE Goods and TURNTABLE Services under the TURNTABLE Mark in a variety of media, including but not limited to online advertising channels, social media, and through partners in the music industry.

14.      The TURNTABLE Services, available at Plaintiff's Websites, are immensely popular among music fans and within the music industry. Today, the company has tens of thousands of

registered users, and licenses content from entertainment companies including Warner Music Group and Mechanical Licensing Collective.

15.     Plaintiff's support forum chat rooms also attract thousands of active users to discuss the TURNTABLE Services.

16.     As a result of Turntable's efforts, and due to the quality of its goods and services, Turntable enjoys a reputation for creating one of the most entertaining and innovative music services available. Over the past few years, the TURNTABLE Goods and TURNTABLE Services offered by Turntable under the TURNTABLE Mark have been the subject of numerous articles and reviews, including, e.g., https://www.musicbusinessworldwide.com/turntable-live-raises-over-7m-in-seed-round-to-launch-social-music-platform/.

17.     While Plaintiff has gained significant common law trademark and other rights in its TURNTABLE Goods, TURNTABLE Services and TURNTABLE Mark resulting from Turntable's promotion, advertising and use, Turntable also owns the TURNTABLE Application.

18.     The TURNTABLE Mark is currently in use in commerce in connection with the TURNTABLE Goods and TURNTABLE Services and was first used in commerce on or before the date of first use as reflected on the TURNTABLE Application.

19.     Plaintiff has spent substantial time, money and effort in building up and developing consumer recognition, awareness and goodwill in its TURNTABLE Goods, TURNTABLE Services and TURNTABLE Mark.

20.     Additionally, Plaintiff owes a substantial amount of the success of the TURNTABLE Goods and TURNTABLE Services to its consumers and the word-of-mouth buzz that its consumers have generated.

21.     Plaintiff's efforts, the quality of its TURNTABLE Goods and TURNTABLE

Services, its marketing, promotional and distribution efforts, as well as the word-of-mouth buzz generated by its consumers have made the TURNTABLE Goods, TURNTABLE Services and TURNTABLE Mark prominently placed in the minds of the public. Consumers and members of the public have become familiar with the TURNTABLE Goods and TURNTABLE Services and associate it exclusively with Turntable.

22.     As a result of such associations, Turntable, and its TURNTABLE Goods and TURNTABLE Services have acquired a valuable reputation and goodwill among the public.

23.     Plaintiff has gone to great lengths to protect its interests in the TURNTABLE Goods, TURNTABLE Services and TURNTABLE Mark. No one other than Plaintiff is authorized to advertise, offer for sale or sell any TURNTABLE Goods or TURNTABLE Services in the United States without the express permission of Plaintiff.

### Defendants' Wrongful and Infringing Conduct

24.     Over a decade ago, Defendant Chasen worked with Plaintiff's founder, Joseph Perla (hereinafter, "J. Perla"), through an entity originally called Stickybits, Inc., but renamed Turntable.fm, Inc. in 2011 (hereinafter referred to as "Turntable.fm I") on a music-focused social networking operation under the name, "Turntable". By selecting and using the name Turntable for a music-focused social networking operation, Defendant Chasen acknowledged that the "Turntable" is distinctive for such services, and has been distinctive for such services for many years.

25.     On July 29, 2014, Turntable.fm I filed for permanent dissolution under Delaware law and stopped offering any goods or services in connection with any "Turntable" marks.

26.     On March 19, 2014, Chasen published an essay at medium.com, confirming that "[a]fter four years, we shut down our final product, Turntable Live, in early January [2014]."[2]

---

[2] Available at https://billychasen.medium.com/shutting-down-7958dae1d27b.

27.     Upon information and belief, upon its dissolution in 2014, any assets of Turntable.fm I should have been assigned for the benefit of creditors or sold and the proceeds distributed to shareholders if any remained after obligations were paid; however, since J. Perla is a shareholder of Turntable.fm I and has not received any distributions, Turntable Labs is informed and believes that the value of the assets did not surpass Turntable.fm I's debts.

28.     Thereafter, Chasen purported to be CEO of several companies relevant to this Action.

29.     Following Turntable's release of the TURNTABLE Goods and TURNTABLE Services in 2020, Chasen began to engage in various unlawful and infringing activities in effort to interfere with Plaintiff's business, infringe Plaintiff's TURNTABLE Mark, trade off Plaintiff's TURNTABLE Goods and TURNTABLE Services and the goodwill that it had amassed in the TURNTABLE Mark, and divert customers and potential customers from Plaintiff's Website and social media accounts to Defendants.

30.     Upon information and belief, on February 9, 2021, Chasen, with full knowledge of Plaintiff's TURNTABLE Mark, filed the Infringing Application to register the trademark TURNTABLE with the United States Patent and Trademark Office ("USPTO") on behalf of Entertainment 720, LLC (hereinafter referred to as, "720"), claiming a date of first use of May 21, 2011 along with the required declarations supporting the Infringing Application. Accompanying this Complaint as **Exhibit 1** is a copy of the Infringing Application.

31.     On April 22, 2021, Chasen, on behalf of 720 filed an amendment to the Infringing Application requesting an amendment to filing basis for the Infringing Application to Section 1(b), alleging that 720 had a bona fide intent to use the mark "Turntable".

32.     On May 7, 2021, Chasen executed two assignments which were filed with the USPTO. One assignment transferred the Infringing Application from 720 to Chasen as an individual.

The second assignment transferred the Infringing Application from Chasen to another Delaware corporation, also called Turntable.fm, Inc. (hereinafter, "Turntable.fm II"). Chasen executed the assignment from himself as an individual to Turntable.fm II on behalf of Turntable.fm II as its CEO. Accompanying this Complaint as **Exhibit 2** are copies of the two assignments.

33.     Accordingly, on or around November 3, 2021, Plaintiff and J. Perla filed an opposition to the Infringing Application, Opp. No. 90519658, on the bases of: priority and likelihood of confusion, a lack of use in commerce of the mark prior to filing the application or amendment to allege use, a lack of bona fide intent to use the mark for the goods and services identified in the application, dilution by blurring, fraud on the USPTO and abandonment (hereinafter, the "Opposition").

34.     Following many months of discovery and two years of litigation before the Trademark Trial and Appeal Board (the "Board"), Defendants voluntarily abandoned the Infringing Application and on August 30, 2023, the Board sustained the Opposition and entered judgment against Turntable.fm II.

35.     Notwithstanding the Board's judgment, Defendant Chasen and his new company, Defendant Testcode, with knowledge of Turntable's superior trademark rights in the TURNTABLE Mark, are now engaging in unlawful actions with vary and include, but are not limited to using the TURNTABLE Mark, or spurious designations that are identical to, substantially indistinguishable from, or confusingly similar to the TURNTABLE Mark, (the "Infringing Marks"), prominently on or in connection with the Infringing Domains, the Infringing Social Media Accounts/Handles, Defendants' Websites, Defendants' Services, and/or the advertisement, marketing, promotion, offering for sale and/or sale of Defendants' Services to U.S. consumers, including those located in the State of New York (hereinafter "Infringing Actions").

36.     For example – while Defendants acknowledged, including through abandonment of

the Infringing Application, that Plaintiff owns superior rights to the TURNTABLE Mark for Online social networking services in the field of music – Defendants are using the Infringing Domains to promote Defendants' Services which are in direct competition Plaintiff's TURNTABLE Services and diverting traffic to Defendants' Website through the Infringing Domains.

37.     By diverting traffic in this fashion, Defendants are, upon  information and belief, improperly increasing their own profits, including by amplifying visibility of and attention to Defendants' www.deepcut.fm website.

38.     Because Defendants compete directly with Plaintiff in offering social networking services in the field of music, such diverted traffic constitutes an effort to draw away Plaintiff's own customers and potential customers. Particularly given the facts that (a) Defendants' own services are not called "Turntable," and (b) Defendants acknowledged Plaintiff's rights in the TURNTABLE Mark, these efforts to divert traffic constitute the type of bad faith that the ACPA and Lanham Act exist to prevent.

39.     Specifically, Defendants host Defendants' Services at the Infringing Domain turntable.fm as seen in the screenshot directly below:



40.     Further, Defendants also use the Infringing Domain, turntable.com, to redirect visitors to Defendants' Services at Defendants' Website at www.deepcut.fm.

41.     Upon information and belief, Defendants have registered, renewed, and/or misappropriated the Infringing Domains in bad faith and are continuing to use the Infringing Domains in bad faith with the intent to deceive the consuming public into believing that the Infringing Domains and Defendants' Websites offer Plaintiff's TURNTABLE Services or otherwise offer services that originated with, and/or are sponsored by, and/or authorized by, and/or approved by Plaintiff.

42.     Given the goodwill and reputation that Plaintiff has built up in its TURNTABLE

Mark, as evidenced, for example, by the rapid growth in Plaintiff's user base, and the significant industry relationships that Plaintiff has formed with content licensors since –since its founding, there is no question that the visitors and customers that Defendants have diverted through their use of the Infringing Domains were seeking Plaintiff's TURNTABLE Services.

43.     Defendants are engaging in the foregoing misuses of the Infringing Domains in order to confuse, deceive and redirect visitors to their directly-competitive services, and in order to prevent Plaintiff from registering and using these domain names for Plaintiff's own TURNTABLE Services.

44.     Defendants also use the Infringing Social Media Accounts/Handles to promote Defendants' Services as seen in the screenshots taken on the social media platform X.





45.     Defendants also use the Infringing Marks to refer the Defendants' Services in public survey forms published to Defendants' users and potential users, and within Defendants' Discord community, as shown in the screenshot below:





46.     Upon information and belief, Defendant Chasen has personally participated in the foregoing conduct, including by setting the Infringing Domains to redirect to deepcut.fm, using the TURNTABLE-branded social media accounts, and repeatedly using Plaintiff's TURNTABLE Mark in social media posts and Discord content.

47.     Defendants' bad faith registration and use of the Infringing Domains (and potentially the TURNTABLE-branded social media accounts) relates back to Defendant Chasen's misappropriation of assets from Turntable.fm I.

48.     Upon information and belief, Chasen misappropriated a set of assets from

Turntable.fm I, including, without limitation, website code, user lists, and the Infringing Domains, despite not having any ownership of rights in these or any other assets that belonged to Turntable.fm I.

49.    Upon information and belief, Chasen then transferred certain of these assets to Defendant Testcode with knowledge of Plaintiff's rights in its TURNTABLE Mark, and with an intent to damage Plaintiff through Chasen and/or Testcode's use of the Infringing Domains.

50.    While the dates of acquisition or original registration by Defendants' predecessors are unknown at this time, public records indicate that both Infringing Domain Names have been re-registered and/or transferred within the past year.

51.    Defendants' re-registrations and/or transfers of ownership (and potentially other changes in the registration status of the Infringing Domains) operate as registration dates for purposes of Plaintiff's claims under the ACPA.

52.    Defendants, including, upon information and belief, Chasen individually and Testcode, have taken steps to prevent Plaintiff from learning the true dates of initial registration, re-registration, and ownership transfer, including by using anonymization services to mask the ownership details associated with the Infringing Domains over the years, and through the date of filing of this complaint.

53.    For example, public records show that either Defendant Chasen or Defendant Testcode re-registered and/or transferred ownership of the turntable.com domain name on March 2, 2023:

**Domain Whois record**

Queried **whois.internic.net** with "**dom turntable.com**"…

```
   Domain Name: TURNTABLE.COM
   Registry Domain ID: 5057065_DOMAIN_COM-VRSN
   Registrar WHOIS Server: whois.godaddy.com
   Registrar URL: http://www.godaddy.com
   Updated Date: 2023-03-02T16:43:35Z
   Creation Date: 1995-02-28T05:00:00Z
   Registry Expiry Date: 2024-03-01T05:00:00Z
   Registrar: GoDaddy.com, LLC
   Registrar IANA ID: 146
   Registrar Abuse Contact Email: abuse@godaddy.com
   Registrar Abuse Contact Phone: 480-624-2505
   Domain Status: clientDeleteProhibited https://icann.org/epp#clientDeleteProhibited
   Domain Status: clientRenewProhibited https://icann.org/epp#clientRenewProhibited
   Domain Status: clientTransferProhibited https://icann.org/epp#clientTransferProhibited
   Domain Status: clientUpdateProhibited https://icann.org/epp#clientUpdateProhibited
   Name Server: JIM.NS.CLOUDFLARE.COM
   Name Server: LIV.NS.CLOUDFLARE.COM
   DNSSEC: unsigned
   URL of the ICANN Whois Inaccuracy Complaint Form: https://www.icann.org/wicf/
>>> Last update of whois database: 2024-02-27T17:59:13Z <<<
```

54.    Public records likewise show that either Defendant Chasen or Defendant Testcode re-registered and/or transferred ownership of the turntable.fm domain name on November 12, 2023:

**Domain Whois record**

Queried **whois.nic.fm** with "**turntable.fm**"…

```
Domain Name: TURNTABLE.FM
Registry Domain ID: D34923314-CNIC
Registrar WHOIS Server: whois.101domain.com
Registrar URL: https://101domain.com/
Updated Date: 2023-11-12T00:52:04.0Z
Creation Date: 2011-01-06T23:59:59.0Z
Registry Expiry Date: 2026-01-06T23:59:59.0Z
Registrar: 101domain GRS Limited
Registrar IANA ID: 1011
Domain Status: clientTransferProhibited https://icann.org/epp#clientTransferProhibited
Registrant Email: https://whois.nic.fm/contact/turntable.fm/registrant
Admin Email: https://whois.nic.fm/contact/turntable.fm/admin
Tech Email: https://whois.nic.fm/contact/turntable.fm/tech
Name Server: JIM.NS.CLOUDFLARE.COM
Name Server: LIV.NS.CLOUDFLARE.COM
DNSSEC: unsigned
Billing Email: https://whois.nic.fm/contact/turntable.fm/billing
Registrar Abuse Contact Email: abuse@101domain.com
Registrar Abuse Contact Phone: +1.7604448674
URL of the ICANN Whois Inaccuracy Complaint Form: https://www.icann.org/wicf/
>>> Last update of WHOIS database: 2024-02-27T18:02:57.0Z <<<
```

55.     Defendants Infringing Actions reflect that Defendants are trading off the goodwill that Plaintiff has built up in its TURNTABLE Goods, TURNTABLE Services and TURNTABLE Marks by interchangeably using Defendants' "Deepcut" mark and Plaintiff's TURNTABLE Mark to refer to Defendants' Services which compete directly with Plaintiff's TURNTABLE Services.

56.     Defendants are not, and have never been, authorized by Plaintiff to use the TURNTABLE Mark, or any marks that are confusingly similar thereto (i.e., the Infringing Marks)

57.     By their actions, as outlined herein, Defendants have violated Plaintiff's exclusive rights in the TURNTABLE Marks and have used marks that are confusingly and/or substantially similar to, identical to and/or constitute infringement of the same in order to confuse consumers into believing that the Infringing Domains, the Infringing Social Media Accounts/Handles, and Defendants' Website are associated with Plaintiff and/or that Defendants' Services are Plaintiff's Services or originate from, are affiliated with, or otherwise authorized by Plaintiff

58.     Defendants' conduct began long after Plaintiff's adoption and use of the TURNTABLE Mark, after Plaintiff filed the TURNTABLE Application, as alleged above, and after TURNTABLE Goods, TURNTABLE Services and TURNTABLE Marks became well-known to the purchasing public.

59.     Prior to and contemporaneous with its actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the TURNTABLE MARK and of the popularity and success of the TURNTABLE Goods and TURNTABLE Services, and in bad faith adopted the same.

60.     Defendants have been engaging in the illegal infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, TURNTABLE Goods, TURNTABLE Services and TURNTABLE Marks.

61.     Defendants' actions, as alleged herein, have caused, and will continue to cause confusion, mistake, economic loss, and have deceived, and will continue to deceive, consumers, the public and the trade with respect to the source or origin of the Infringing Domains, Infringing Social Media Accounts/Handles, Defendants' Website and Defendants' Services, thereby causing consumers to erroneously believe that the Infringing Domains, Infringing Social Media Accounts/Handles, Defendants' Website and/or Defendants' Services are licensed by or otherwise associated with Plaintiff, and/or unfairly divert consumers, who otherwise would have been interested in Plaintiff's TURNTABLE Goods and TURNTABLE Services (via Plaintiff's Websites or otherwise), to purchase Defendants' Services, thereby damaging Plaintiff.

62.     By engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed the TURNTABLE Mark, engaged in cybersquatting, committed unfair competition, and unfairly profited from such activities at Plaintiff's expense.

63.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Infringement of Unregistered Trademarks)
### [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

64.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

65.     Plaintiff, who is in direct competition with Defendants and has been damaged by Defendants actions (as alleged herein), and as the owner of all right, title and interest in and to the TURNTABLE Mark, has standing to maintain an action for infringement of unregistered trademarks under the Lanham Act, § 43(a) (15 U.S.C. § 1125).

66.     The TURNTABLE Mark is inherently distinctive and/or has acquired distinctiveness.

67.     Defendants have knowingly and willfully used Infringing Marks in connection with the advertisement, marketing, promotion, offering for sale and/or sale of Defendants' Services with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' Services are Plaintiff's Services, and/or that Infringing Domains, Infringing Social Media Accounts/Handles, Defendants' Website and/or Defendants' Services are authorized, sponsored, approved endorsed or licensed by Plaintiff, and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of the Infringing Domains, the Infringing Social Media Accounts/Handles, Defendants' Website and/or Defendants' Service, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, Plaintiff's TURNTABLE Goods, TURNTABLE Services and TURNTABLE Marks, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

68.     By using the Infringing Marks, Defendants have traded off the extensive goodwill of Plaintiff, its TURNTABLE Goods, TURNTABLE Services and TURNTABLE Marks to deliberately induce customers to purchase and use Defendants' Services and will continue to induce such customers to do the same, thereby directly competing with Plaintiff. Such conduct has permitted, and will continue to permit, Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which it has amassed through their nationwide marketing, advertising, sales and consumer recognition.

69.     Defendants' use of the Infringing Marks has resulted in lost sales of the Plaintiff's Services and/or has caused substantial injury to Plaintiff's business and its reputation.

70.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of the Infringing Marks would cause confusion, mistake, or deception among purchasers, users and the public.

71.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiff, its TURNTABLE Goods, TURNTABLE Services and TURNTABLE Marks.

72.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of the value of its TURNTABLE Mark as commercial assets, and the goodwill and reputation associated with the TURNTABLE Goods and TURNTABLE Services, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of Plaintiff's TURNTABLE Marks and TURNTABLE Goods and TURNTABLE Services in an amount as yet unknown, but to be determined at trial.

73.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief, as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### (Federal Unfair Competition: False Designation of Origin, Passing Off)
### [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

74.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

75.     Plaintiff, as the owner of all right, title and interest in and to the TURNTABLE Mark has standing to maintain an action for unfair competition, including false designation of origin and passing off, under the Lanham Act § 43(a) (15 U.S.C. § 1125).

76.     The TURNTABLE Mark is inherently distinctive and/or has acquired distinctiveness.

77.     Defendants knowingly and willfully used false designations of origin and false and misleading descriptions and representations on or in connection with the Infringing Domains, the Infringing Social Media Accounts/Handles, Defendants' Website and/or their advertising, marketing, promoting, and/or offering for sale of Defendants' Services, with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that the Infringing Domains, the Infringing Social Media Accounts/Handles, Defendants' Website and/or Defendants' Services are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of the Infringing Domains, the Infringing Social Media Accounts/Handles, Defendants' Website and/or Defendants' Services, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the TURNTABLE Mark, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

78.     By using the Infringing Marks that are identical to, confusingly similar to or which constitute a colorable imitation of Plaintiff's TURNTABLE Mark, Defendants have traded off the extensive goodwill of Plaintiff, its TURNTABLE Mark and TURNTABLE Goods and TURNTABLE Services, and did in fact induce, and intends to, and will continue to induce customers to purchase Defendants' Services, thereby directly and unfairly competing with Plaintiff. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its TURNTABLE Mark, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

79.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or

confusingly similar to and constitute reproductions of the TURNTABLE Mark, particularly on or connection with the Infringing Domains, the Infringing Social Media Accounts/Handles and Defendants' Website, would cause confusion, mistake or deception among purchasers, users and the public.

80. Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiff, its Plaintiff's TURNTABLE Marks and TURNTABLE Goods and TURNTABLE Services.

81. As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its TURNTABLE Services and by depriving Plaintiff of the value of its TURNTABLE Mark as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the TURNTABLE Mark.

82. Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
#### (Cybersquatting Under the Anticybersquatting Consumer Protection Act)
#### [15 U.S.C. § 1125(d)(1)]

83. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

84.     The Infringing Domains is identical or confusingly similar to the TURNTABLE Mark, which is distinctive and/or well-known to the relevant consuming at the time Defendants registered, renewed or misappropriated the Infringing Domains.

85.     Defendants registered and used the Infringing Domains with the bad faith intent to profit from the TURNTABLE Mark, namely by using the Infringing Domains to host Defendants' Website where Defendants offer for sale and/or sell Defendants' Services.

86.     Defendants have no trademark or other intellectual property rights in the Infringing Domains.

87.     Defendants' activities as alleged herein violate the federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).

88.     Plaintiff has no adequate remedy at law, and if Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

89.     Defendants are causing and are likely to continue to cause substantial injury to the public and to Plaintiff, and Plaintiff is therefore entitled to injunctive relief, including an order requiring the transfer of the Infringing Domains to Plaintiff and to recover the costs of this action under 15 U.S.C. § 1116, 117 and 1125(d).  In light of the egregious and exceptional nature of Defendants' conduct, Plaintiff is further entitled to reasonable attorneys' fees.

**FOURTH CAUSE OF ACTION**
**(Unfair Competition)**
**[New York Law]**

90.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

91.     By using the Infringing Marks, prominently on or in connection with the Infringing Domains, the Infringing Social Media Accounts/Handles, Defendants' Websites, Defendants' Services,

and/or the advertisement, marketing, promotion, offering for sale and/or sale of Defendants' Services Defendants have traded off the extensive goodwill of Plaintiff and its TURNTABLE Goods and TURNTABLE Services to induce, and did induce and intend and will continue to induce, customers to purchase Defendants' Services, thereby directly competing with Plaintiff. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

92.     Defendants' use of the Infringing Marks and engagement in the Infringing Actions was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' Services.

93.     Defendants knew, or by the exercise of reasonable care should have known, that their Infringing Activities would cause confusion and mistake, or deceive purchasers, users and the public.

94.     Upon information and belief, Defendants' aforementioned Infringing Activities have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff, and its competitive position while benefiting Defendants.

95.     As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its TURNTABLE Goods and TURNTABLE Services in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been and will continue to be deprived of the value of its TURNTABLE Mark as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

96. As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive and each of them, as follows:

A. For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for trademark infringement and unfair competition under 15 U.S.C. §1125(a);

B. For an order transferring the Infringing Domain Name to Plaintiff pursuant to 15 U.S.C. § 1125(d)(1)(C);

C. For an award of damages to be proven at trial for common law unfair competition;

D. For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, and/or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:;

    i. directly or indirectly infringing in any manner Plaintiff's trademarks, trade dress or copyrights (whether now in existence or hereafter created), including, without limitation Plaintiff's TURNTABLE Mark;

    ii. using any reproduction, counterfeit, copy, or colorable imitation of Plaintiff's TURNTABLE Mark to identify any goods or services not authorized by

Plaintiff;

iii. using the Infringing Domains and the Infringing Social Media Accounts/Handles

iv. using Plaintiff's TURNTABLE Mark, the Infringing Marks or any other marks that are confusingly similar to the same on or in connection with the Defendants' Websites and/or Defendants' Services, and/or to identify any goods or services not authorized by Plaintiff;

v. using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product or service manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff; and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendant, website owned or operated by Defendant, services provided by Defendant, and/or Defendants' commercial activities by Plaintiff;

vi. engaging in any other actions that constitute unfair competition with Plaintiff;

vii. engaging in any other act in derogation of Plaintiff's rights;

viii. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

ix. registering, trafficking in or using any domain names that incorporate any of

Plaintiff's TURNTABLE Mark, or any colorable imitations thereof, including the Infringing Domains; and

x.   knowingly instructing any other person or entity to engage or perform any of the activities referred to in subparagraphs (i) through (ix) above; and

B.   For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession, which rightfully belong to Plaintiff;

C.   For an award of exemplary or punitive damages in an amount to be determined by the Court;

D.   For Plaintiff's reasonable attorneys' fees;

E.   For all costs of suit; and

F.   For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all claims.

Dated: February 28, 2024        Respectfully submitted,

**EPSTEIN DRANGEL LLP**

BY:   _____
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*